Slip Op. 20-58

## UNITED STATES COURT OF INTERNATIONAL TRADE

**NOVOLIPETSK STEEL PUBLIC JOINT STOCK COMPANY and NOVEX TRADING (SWISS) SA,**

        **Plaintiffs,**

v.

**UNITED STATES,**

        **Defendant,**

**and**

**STEEL DYNAMICS, INC. and NUCOR CORPORATION,**

        **Defendant-Intervenors.**

**Before: Claire R. Kelly, Judge**

**Court No. 19-00194**

## OPINION AND ORDER

[Granting Defendant and Defendant-Intervenors' motions to dismiss for lack of subject matter jurisdiction.]

Dated: May 1, 2020

Valerie Ellis, Curtis, Mallet-Prevost, Colt & Mosle LLP, of Washington, D.C., for plaintiffs Novolipetsk Steel Public Joint Stock Company and NOVEX Trading (Swiss) SA.

Joseph H. Hunt, Assistant Attorney General, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant. With him on the brief were Jeanne E. Davidson, Director, Tara K. Hogan, Assistant Director, and Kelly A. Krystyniak, Trial Attorney. Of counsel was Brandon J. Custard, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

<u>Roger B. Schagrin</u>, <u>Luke A. Meisner</u>, and <u>Kelsey M. Rule</u>, Schagrin Associates, of Washington, D.C., for defendant-intervenor Steel Dynamics, Inc.

<u>Alan H. Price</u>, <u>Christopher B. Weld</u>, <u>Maureen E. Thorson</u>, and <u>Cynthia C. Galvez</u>, Wiley Rein LLP, of Washington, D.C., for defendant-intervenor Nucor Corporation.

Kelly, Judge:   Before the court are Defendant the United States' and Defendant-Intervenors Steel Dynamics, Inc. and Nucor Corporation's motions to dismiss Plaintiffs' complaint for lack of subject matter jurisdiction.  <u>See</u> Def.'s Mot. Dismiss, Dec. 23, 2019, ECF No. 19 ("Def.'s Br."); Proposed Def.-Intervenors' Mot. Dismiss Pls.' Compl., Nov. 21, 2019, ECF No. 18 ("Def.-Intervenors' Br.").[1]  Plaintiffs Novolipetsk Steel Public Joint Stock Company ("NLMK") and NOVEX Trading (Swiss) SA ("NOVEX") bring this action to challenge the U.S. Department of Commerce's ("Commerce" or "Department") failure to determine an all others rate, following Commerce's determination that it would treat the Russian Federation ("Russia") as a market economy ("ME") country and the United States' extension of permanent normal trading relations ("PNTR") to Russia, in the antidumping duty ("ADD") order on hot-rolled flat-rolled carbon-quality steel products ("HRC") from Russia.  <u>See</u> Compl. at ¶¶ 2–3, 6–42, Oct. 22, 2019, ECF No. 5; <u>see also</u> <u>Termination</u> <u>of the Suspension Agreement on [HRC] from [Russia], Rescission of 2013-2014</u>

---

[1] In its motion to dismiss, Defendant cites U.S. Court of International Trade ("USCIT") Rule 12(b)(6) as the basis to dismiss Plaintiffs' complaint.  <u>See</u> Def.'s Br. at 2.  However, Defendant elaborates that the court lacks subject matter jurisdiction and does not challenge the complaint for failing to state a claim.  <u>Id.</u> at 2, 6–13. Therefore, the court understands Defendant to move under USCIT Rule 12(b)(1) to dismiss Plaintiffs' complaint.

Administrative Review, and Issuance of [ADD] Order, 79 Fed. Reg. 77,455 (Dep't Commerce Dec. 24, 2014) ("ADD Order").  Plaintiffs allege that Commerce unlawfully and erroneously failed to determine an all others rate in the ADD Order, following Russia's graduation to an ME country and the extension of PNTR, when it had, instead, calculated a country-wide rate in the final determination.  See Compl. at ¶¶ 17–18, 26(a), 27–28.  Plaintiffs also challenge the all others rate as arbitrary and capricious, unsupported by substantial evidence, an abuse of agency discretion, and exceeding express statutory limitations.  Id. at ¶¶ 26(b), 29–34.  Given the application of the country-wide rate as an all others rate, Plaintiffs also contend Russian exporters are treated less favorably than exporters in other former non-market economy ("NME") countries, resulting in unlawful discriminatory treatment.  Id. at ¶¶ 26(c), 35–42.

Defendant and Defendant-Intervenors, in their motions to dismiss, contend that the court lacks subject matter jurisdiction to entertain Plaintiffs' claims.  See Def.'s Br. at 2, 6–13; Def.-Intervenors' Br. at 6–16.  According to Defendant and Defendant-Intervenors, Plaintiffs' complaint is a challenge to the all others rate in the ADD Order, a determination reviewable under 28 U.S.C. § 1581(c).  See Def.'s Br. at 8–10; Def.-Intervenors' Br. at 6–13.  In the alternative, Defendant and Defendant-Intervenors contend that even if the court has jurisdiction under 28 U.S.C. § 1581(i), Plaintiffs' challenge is untimely and barred by the statute of limitations, because their cause of action accrued over two years prior to

commencing this action.  See Def.'s Br. at 10–13; Def.-Intervenors' Br. at 14–16.

Plaintiffs counter that jurisdiction lies under 28 U.S.C. § 1581(i), because they do not

contest a final determination by Commerce, but challenge Commerce's alleged

discriminatory treatment and its administration and enforcement of the ADD laws,

which causes continuing harm.  See Pls.' Resp. Opp'n [Def.'s Br.] at 8–17, Jan. 27,

2020, ECF No. 23 ("Pls.' Resp. Def.'s Br."); Pls.' Resp. Opp'n [Def.-Intervenors' Br.] at

5–15, Dec. 27, 2019, ECF No. 20 ("Pls.' Resp. Def.-Intervenors' Br."); see also Compl.

at ¶¶ 2–3.  In addition, Plaintiffs aver that they timely initiated this challenge,

because their cause of action accrued within the statute of limitations.  See Pls.' Resp.

Def.'s Br. at 12–17; Pls.' Resp. Def.-Intervenors' Br. at 12–16.[2]  For the reasons that

follow, the court lacks jurisdiction over Plaintiffs' claims and Defendant's and

Defendant-Intervenors' motions to dismiss are granted.

## BACKGROUND

On October 22, 1998, Commerce initiated an ADD investigation on imports of

HRC from Russia, and selected, inter alia, Novolipetsk Iron & Steel Corporation

---

[2] Plaintiffs also allege that Defendant intentionally misled the court in using "Novolipetsk" as a short form to refer to three separate companies—NLMK, NOVEX, and NISCO—and by mischaracterizing certain facts about Commerce's investigation of HRC from Russia.  See Pls.' Resp. Def.'s Br. at 1–8.  Defendant acknowledges its errors, explains that any mischaracterization was inadvertent, and notes that the factual issues raised are not germane to the jurisdictional question.  See Def.'s Reply Supp. Mot. Dismiss at 8–11, Mar. 10, 2020, ECF No. 26.  Given that, when the court evaluates a motion to dismiss for lack of subject matter jurisdiction, it must accept all undisputed allegations as true, Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583–84 (Fed. Cir. 1993), Defendants' recognition of its error nullifies any alleged disagreement as to the relevant facts.

("NISCO")[3] as a respondent.  See Initiation of [ADD] Investigations: [HRC] from Brazil, Japan, and [Russia], 63 Fed. Reg. 56,607 (Dep't Commerce Oct. 22, 1998); Notice of Prelim. Determination of Sales at [LTFV]; [HRC] from [Russia], 64 Fed. Reg. 9,312, 9,314 (Dep't Commerce Feb. 25, 1999) ("Prelim. Results").  Subsequently, on March 1, 1999, NISCO informed Commerce by letter that it was withdrawing from participation in the investigation.  See Notice of Final Determination of Sales at [LTFV]: [HRC] from Russia, 64 Fed. Reg. 38,626, 38,628 (Dep't Commerce July 19, 1999) ("Final Results").  On July 12, 1999, Commerce entered into an agreement with Russia's Ministry of Trade to suspend the investigation ("Suspension Agreement").  See Suspension of [ADD] Investigation: [HRC] from [Russia], 64 Fed. Reg. 38,642, 38,642 (Dep't Commerce July 19, 1999).  However, at the request of petitioners, Commerce continued the investigation and made an affirmative final determination of sales at LTFV.  See Final Results, 64 Fed. Reg. at 38,627.[4]  Commerce calculated

---

[3] According to Plaintiffs, NISCO was a state-owned enterprise and predecessor to NLMK.  See Pls.' Resp. Def.'s Br. at 6.

[4] Commerce used "total adverse facts available" to derive the Russia-wide rate, because certain respondents did not respond to Commerce's request for information and Commerce could not verify, inter alia, NISCO's questionnaire response due to its withdrawal from the investigation.  See Final Results, 64 Fed. Reg. at 38,630. The phrase "total adverse facts available" or "total AFA" encompasses a series of steps that Commerce takes to reach the conclusion that all of a party's reported information is unreliable or unusable and that as a result of a party's failure to cooperate to the best of its ability.  Parties and Commerce sometimes use the shorthand "AFA" or "adverse facts available" or "AFA" to refer to Commerce's reliance on facts otherwise

(footnote continued)

a country-wide, or Russia-wide, dumping margin of 184.56 percent and a weighted-average dumping margin of 73.59 percent for Joint Stock Company Severstal, which received a separate rate.  See id., 64 Fed. Reg. at 38,641.  The International Trade Commission ("Commission") also made an affirmative determination of material injury.  See [HRC] from Brazil and [Russia], 64 Fed. Reg. 46,951 (Int'l Trade Comm'n Aug. 27, 1999).  No ADD order issued.

In 2002, Commerce announced that it would consider Russia an ME country for purposes of applying U.S. antidumping laws.  See Compl. at ¶ 11; see also 19 U.S.C. § 1677(18)(C) ("Any determination that a foreign country is a nonmarket economy country shall remain in effect until revoked by the administering authority.").  A decade later, in 2012, Russia became a member of the World Trade Organization, and the United States extended PNTR.  See Russia and Moldova Jackson-Vanik Repeal and Sergei Magnitsky Rule of Law Accountability Act of 2012, Pub. L. No. 112-208, 126 Stat. 1496; Proclamation 8920 of Dec. 20, 2012 to Extend Nondiscriminatory Treatment (Normal Trade Relations) to the Products of [Russia] and the Republic of Moldova, 77 Fed. Reg. 76,797 (Pres. Doc. Dec. 28, 2012); see also

---

available with an adverse inference to reach a final determination.  However, AFA encompasses a two-part inquiry pursuant to which Commerce must first identify why it needs to rely on facts otherwise available, and second, explain how a party failed to cooperate to the best of its ability as to warrant the use of an adverse inference when "selecting among the facts otherwise available."  See 19 U.S.C. § 1677e(a)–(b).

19 U.S.C. § 2434.[5]  On July 10, 2014, domestic interested parties asked by letter that Commerce terminate the Suspension Agreement and impose antidumping duties on HRC imports from Russia.  See ADD Order, 79 Fed. Reg. at 77,455.  Soon after, on August 29, 2014, Commerce, at the request of Russian HRC producers, initiated an administrative review of the Suspension Agreement, for the period of July 1, 2013 to June 30, 2014.  See id.  Following a letter sent to Russia stating Commerce's intent to terminate the Suspension Agreement, Commerce terminated the Suspension Agreement, effective December 19, 2014.  See id., 79 Fed. Reg. at 77,456.  Commerce then rescinded the administrative review and issued an ADD order.  See id.  In the ADD Order, Commerce set the cash deposit rate equal to the margins calculated in the final determination, setting the Russia-wide rate of 184.56 percent as the all others rate and assigning Joint Stock Company Severstal a weighted-average dumping margin of 73.59 percent.  See Final Results, 64 Fed. Reg. at 38,641; ADD Order, 79 Fed. Reg. at 77,456.

On October 23, 2017, Plaintiffs made an entry of HRC from Russia, and subsequently requested administrative review of the ADD Order.  See [HRC] from [Russia], 84 Fed. Reg. 4,776 (Dep't Commerce Feb. 19, 2019) (prelim. results of [ADD] admin. review; 2016–2017), and accompanying Decision Memo. for the Prelim.

---

[5] PNTR is a legal designation, indicating that the United States has extended "most-favored nation" to a trading partner.  See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, 112 Stat. 685 (replacing the term "most-favored nation" with PNTR).

Results of the [ADD] Admin. Review of [HRC] from [Russia], A-821-809 (Feb. 11, 2019), <u>available at</u> https://enforcement.trade.gov/frn/summary/russia/2019-02586-1.pdf (last visited Apr. 28, 2020) ("Admin. Rev. Prelim. Decision Memo.").[6]  Commerce preliminarily determined that Plaintiffs did not make a bona fide sale.  <u>See</u> Admin. Rev. Prelim. Decision Memo. at 7–8.   In its final determination, Commerce maintained its finding that Plaintiffs did not make a bona fide sale, rescinded the administrative review, and continued to assign an all others rate of 184.56 percent. <u>See</u> <u>[HRC] from [Russia]</u>, 84 Fed. Reg. 38,948, 38,949 (Dep't Commerce Aug. 8, 2019) (final results and rescission of [ADD] admin. review) ("<u>Final Results in 16–17 Admin. Review</u>"), and accompanying Issues & Decision Memo. for the [Final Results in 16–17 Admin. Review] at 17–18, A-821-809, (Aug. 2, 2019), <u>available at</u> https://enforcement.trade.gov/frn/summary/russia/2019-17006-1.pdf  (last visited Apr. 28, 2020) ("Final Decision Memo. in 16–17 Admin. Review").   NLMK and NOVEX commenced a separate action, also pending before this court, challenging Commerce's <u>Final Results in 16–17 Admin. Review</u>.  <u>See generally</u> <u>Novolipetsk Steel Public Joint Stock Company v. United States</u>, Ct. No. 19-00172.

## STANDARD OF REVIEW

The party seeking the Court's jurisdiction has the burden of establishing that jurisdiction exists.  <u>See</u> <u>Norsk Hydro Can., Inc. v. United States</u>, 472 F.3d 1347, 1355

---

[6] Specifically, NLMK had made a sale to NOVEX, the importer of record.  <u>See</u> Pls.' Resp. Def.-Intervenors' Br. at 7; <u>see also</u> Final Decision Memo. in 16–17 Admin. Review at 14.

(Fed. Cir. 2006); see also Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). When deciding a motion to dismiss for lack of subject-matter jurisdiction, the Court must first determine whether the motion seeking dismissal "challenges the sufficiency of the pleadings or controverts the factual allegations made in the pleadings." See H & H Wholesale Servs., Inc. v. United States, 30 CIT 689, 691, 437 F. Supp. 2d 1335, 1339 (2006) (citation omitted). If the motion controverts the basis for jurisdiction pled by the non-moving party, then "the allegations in the complaint are not controlling," and the court assumes that all undisputed facts alleged in the complaint are true. Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583–84 (Fed. Cir. 1993).

## DISCUSSION

Defendant and Defendant-Intervenors contend that the court lacks subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1581(i), which requires dismissal of the complaint. See Def.'s Br. at 8–13; Def.-Intervenors' Br. at 7–16. According to both, Plaintiffs challenge an ADD order embodying a final determination that would have been reviewable under 28 U.S.C. § 1581(c) had Plaintiffs brought timely action; now, however, administrative review is the proper means to challenge the all others rate. See Def.'s Br. at 10; Def.-Intervenors' Br. at 10–13. Plaintiffs counter that they do not seek judicial review of an agency determination that would establish jurisdiction under subsection 1581(c); rather, they challenge Commerce's failure to determine an all others rate, which is reviewable under subsection 1581(i).

See Pls.' Resp. Def.'s Br. at 11; Pls.' Resp. Def.-Intervenors' Br. at 5–7.[7]   Further, Plaintiffs argue that even if they could pursue administrative review as another remedial avenue under subsection 1581(c), the remedy would be manifestly inadequate and, therefore, would support the exercise of residual jurisdiction over the present action.  See Pls.' Resp. Def.'s Br. at 10, 17; Pls.' Resp. Def.-Intervenors' Br. at 7–12.  For the reasons that follow, the court lacks subject matter jurisdiction over Plaintiffs' claims.

Depending on the designation of a country as an NME or ME, Commerce applies different methodologies to calculate normal value in an antidumping investigation, which affects the calculation of dumping margins.  Normal value refers to "the price at which the foreign like product is first sold . . . for consumption in the exporting country[.]" 19 U.S.C. § 1677b(a)(1)(B)(i).  A dumping margin is "the amount by which normal value exceeds the export price or constructed export price of the subject merchandise."   Id. at § 1677(35)(A).   For an ME country, Commerce determines normal value on the basis of sales or constructed normal value.  See 19 U.S.C. § 1677b(a); see also 19 C.F.R. § 351.403–351.407.  By contrast, if the exporting country is designated as an NME, "sales of merchandise in [that NME] country do

---

[7] In response to Defendant's factual allegations concerning the history of the investigation of HRC from Russia, Plaintiffs intimate that "Commerce's AD order, which ended the investigation segment, is unlawful" because domestic interested parties did not meet the burden of persuasion that the Suspension Agreement should be terminated.  See Pls.' Resp. Def.'s Br. at 7–8.  However, because Plaintiffs "had not intended to challenge Commerce's improper termination of the suspension agreement," the court does not address that issue.  Id. at 7.

not reflect the fair value of merchandise." 19 U.S.C. § 1677(18)(A). Therefore, Commerce determines normal value based on an NME producer's factors of production, used to produce the subject merchandise, in an ME country or countries. See id. at § 1677b(c); see also 19 C.F.R. § 351.408. Commerce assumes that all producers are part of the government-entity and, in its preliminary and final determinations, calculates one country-wide margin, unless an investigated respondent demonstrates it qualifies for a separate rate. See 19 C.F.R. § 351.408.[8]

Irrespective of whether Commerce applies the NME or ME methodology, Commerce issues preliminary and final determinations, where it estimates the "weighted average dumping margin for each exporter and producer individually investigated" and the "all-others rate for all exporters and producers not individually investigated." 19 U.S.C. §§ 1673b(d)(1)(A), 1673d(c)(1)(B)(i); see also 19 C.F.R. §§ 351.205, 351.210. The all others rate is the "amount equal to the weighted average of the estimated weighted average dumping margins established for exporters and producers individually investigated, excluding any zero and de minimis margins, and any margins determined entirely under section 1677e of this title" (i.e., based on facts available). 19 U.S.C. § 1673d(c)(5); see also id. at § 1677e. Following a final

---

[8] In 1999, when Commerce issued the Preliminary Results and Final Results, Commerce's practice was to assign separate rates to NME investigated respondents that completed questionnaire responses and established their eligibility for a separate rate by demonstrating an absence of government control in law and in fact. See Prelim. Results, 64 Fed. Reg. at 9,315–16.

affirmative determination of sales at LTFV, and a final affirmative determination of

injury by the Commission, Commerce issues an ADD order, which marks the end of

the investigative phase of the proceeding.   See id. at § 1673e(a)–(b); 19 C.F.R.

§ 351.211. Commerce imposes antidumping duties "in an amount equal to the amount

by which the normal value exceeds the export price (or the constructed export price)

for the merchandise."  19 U.S.C. § 1673; see also id. at § 1673e(a).

Section 1581 enumerates the Court's jurisdictional bases.  28 U.S.C. § 1581.

Relevant here, subsection (c) grants the Court "exclusive jurisdiction of any civil

action commenced under section 516A or 517 of the Tariff Act of 1930," id. at § 1581(c),

which pertain to determinations in countervailing duty and ADD proceedings and

claims of evasion of countervailing duty and ADD orders, respectively.   19 U.S.C.

§§ 1516a, 1517.  Subsection (i) is a "residual" grant of jurisdiction for review of, inter

alia, the "administration and enforcement" of claims that can be challenged under 28

U.S.C. § 1581(c), see 28 U.S.C. § 1581(i)(4), and claims when the remedy under

another subsection of 1581 would be manifestly inadequate.  See Fujitsu Gen. Am.,

Inc. v. United States, 283 F.3d 1364, 1371 (Fed. Cir. 2002).

Here, Plaintiffs' request for a redetermined all others rate lies in a challenge

to the ADD Order, which would support jurisdiction under 1581(c).  See Compl. at ¶

26, Prayer for Judgment and Relief.[9]  Commerce initiated its investigation of HRC

---

[9] Although Plaintiffs allege that Commerce's failure to determine an all others rate

(footnote continued)

imports from Russia, designated at that time as an NME country, and, in its final

determination, calculated a Russia-wide rate as well as a weighted-average rate. See

Final Results, 64 Fed. Reg. at 38,629, 38,641.  When Commerce issued its ADD Order,

following Russia's designation as an ME country, it stated that it was "instructing

CBP to require a cash deposit for each entry equal to the AD weighted-average

margin rates found in the Department's Final Determination" and that the "all others

rate applies to all producers and exporters of subject merchandise not specifically

---

constitutes defective administration of antidumping laws, see Compl. ¶¶ 2, 26–28,
Commerce made a final determination and published the ADD Order, consistent with
its statutory obligations.  In the final determination, Commerce applied its NME
methodology to determine the amount by which normal value exceeds export price,
resulting in the calculation of Russia-wide and weighted-average dumping margins.
See generally Final Results.  When Commerce issued the ADD Order, subsequent to
the designation of Russia as an ME country, it imposed "an antidumping duty equal
to the amount by which the normal value of the merchandise exceeds the export price
(or the constructed export price) of the merchandise[.]"  19 U.S.C. § 1673e(a).  More
specifically, Commerce imposed an ADD in the amount equal to the Russia-wide rate
it had found in the final determination.

Further, Plaintiffs' assertion that "the absence of an all others rate
determination is not susceptible to challenge under 19 U.S.C. § 1516a" is mistaken.
Pls.' Resp. Def.-Intervenors' Br. at 7.  Plaintiffs equate Commerce's failure to include
"discussion or information . . . in the AD Order with respect to the all others rate"
with a failure to make a determination within the meaning of 19 U.S.C. § 1677f(i).
Id. at 5–6.  Section 1677f(i) sets out the disclosure requirements for, inter alia,
preliminary and final determinations, not ADD orders. See 19 U.S.C. 1677f(i)(1).  An
alleged deficiency in a determination does not mean a determination was not
rendered.  Here, Plaintiffs do not suggest that Commerce failed to publish a final
determination—and indeed acknowledge that Commerce issued the Final Results—
but, instead, appear to challenge the ADD Order's embodiment of the final
determination.  More specifically, Plaintiffs challenge the adoption of a country-wide
rate as an all others rate without explanation in the ADD Order. See Pls.' Resp. Def.-
Intervenors' Br. at 5–6.  The ADD Order would be susceptible to judicial review under
19 U.S.C. § 1516a. See 19 U.S.C. § 1516a(a)(2)(A)(i)(II), (a)(2)(B)(i); see also 28 U.S.C.
§ 1581(c).

listed." <u>ADD Order</u>, 79 Fed. Reg. at 77,456.  Commerce made no further reference to

the all others rate.  <u>See generally</u> <u>id.</u>  Commerce's conclusory pronouncement

concerning the all others rate in the <u>ADD Order</u> does not affect the jurisdictional

question before the court. <u>See</u> Compl. at ¶¶ 26–28.[10]  Rather, to the extent that there

is a mismatch and lack of explanation between the final determination, where

Commerce determined a Russia-wide rate, and the <u>ADD Order,</u> where Commerce set

the all others rate, Plaintiffs would have been able to challenge the all others rate in

the <u>ADD Order</u>—which embodies the final determination—and to obtain a

redetermined cash deposit rate under subsection 1581(c).   <u>See</u> 19 U.S.C. §

1516a(a)(2)(A)(i)(II), (a)(2)(B)(i); 28 U.S.C. § 1581(c); <u>see also</u> <u>U.S. Steel Corp. v.</u>

<u>United States</u>, 42 CIT __, __, 319 F. Supp. 3d 1295, 1300–01 (2018).

However, jurisdiction under subsection 1581(c) is no longer available.  Section

1516a(a)(2)(B)(i) details what determinations may be challenged when.  <u>See</u> 19 U.S.C.

§ 1516a(a)(2)(B)(i); <u>see also</u> 28 U.S.C. § 2636.[11]  A party may challenge an ADD order

---

[10] In support of Plaintiffs' view that Commerce failed to render a determination susceptible to challenge, Plaintiffs contend that a "failure to act does not constitute a final agency action subject to review."  Pls.' Resp. Def.'s Br. at 11.  That argument does not find support in the Administrative Procedure Act, which lists a failure to act as a type of agency action susceptible to judicial review.  <u>See</u> 5 U.S.C. § 551(13) (defining an "agency action" as, inter alia, a "failure to act"); <u>see also</u> <u>id.</u> at §§ 701, 705.  In addition, Plaintiffs' theory that a failure to act is not challengeable under the APA contradicts Plaintiffs' claim for relief under the APA, to compel Commerce to set an all others rate in the <u>ADD Order</u>.  <u>See</u> Compl.; <u>see also</u> Pls.' Resp. Def.'s Br. at 11.

[11] Plaintiffs contend that its action is timely, because they were not injured until they

(footnote continued)

based upon a final affirmative determination by filing in this Court both a summons, within 30 days of the order's publication in the Federal Register, and, within 30 days later, a complaint. <u>See</u> 19 U.S.C. § 1516a(a)(2)(A)(i)(II), (a)(2)(B)(i).  Here, Commerce issued its <u>Final Results</u> and, following the termination of the Suspension Agreement, published the <u>ADD Order</u>.  Neither Plaintiffs nor any participant to the proceeding commenced an action within 30 days of the publication of the <u>ADD Order</u>.  Given that the <u>ADD Order</u> would have been susceptible to challenge, jurisdiction would have laid under subsection (c), foreclosing jurisdiction under subsection (i).[12]

---

became subject to posting cash deposits on October 23, 2017 and sought administrative review.  <u>See</u> Pls.' Resp. Def.'s Br. at 8, 12–13.  In making this argument, Plaintiffs focus on the timeliness of an action under 28 U.S.C. § 1581(i). However, for the reasons discussed above, the court does not have subject matter jurisdiction under subsection (i).

[12] Defendant and Defendant-Intervenors argue that Plaintiffs could obtain a new cash deposit rate by making sales of HRC and seeking administrative review of the <u>ADD Order</u>.  Def.'s Br. at 10; Def.-Intervenors' Br. at 11–12; <u>see also</u> 19 U.S.C. § 1675(a). Plaintiffs disagree.  They explain that in the 2017–2018 review Commerce again assigned an all others rate of 184.56 percent and, in January 2020, issued liquidation instructions on NLMK merchandise exported by any party.  <u>See</u> Pls.' Resp. Def.'s Br. at 9.  Plaintiffs allege that even if they were to win the appeal in the 2016–2017 administrative review, that 2017–2018 review would supersede and re-impose the 184.56 percent rate.  <u>Id.</u> at 9–10.  Plaintiffs characterize the application of a previously established margin as a cash deposit rate in a subsequent administrative review as "an act of sabotage" and claim that the governments' conduct is "likely to recur," imposing a continuing harm.  <u>See id.</u> at 10, 12–17.  Also, given that Commerce "preordained" the outcome of the 2016–2017 administrative review, Plaintiffs argue that they have no other remedy under section 1581 to challenge the all others rate than subsection (i).  <u>See</u> Pls.' Resp. Def.-Intervenors' Br. at 8.  Setting aside Plaintiffs' characterizations, nothing they assert establishes jurisdiction in this case, because they complain of the appropriateness of the all others rate imposed by the ADD order. Therefore, the court does not reach either Defendant's and Defendant-Intervenors' positions regarding the availability of a challenge to an administrative review or Plaintiffs' response.

## CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant's and Defendant-Intervenors' motions to dismiss

are granted and Plaintiffs' complaint is dismissed.  Judgment will enter accordingly.


                                                      /s/ Claire R. Kelly
                                                    Claire R. Kelly, Judge


Dated:        May 1, 2020
              New York, New York